IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| CAROL WAYNE FRAZIER AND § <br> TONYA R. FRAZIER, INDIVIDUALLY § <br> AND AS REPRESENTATIVE OF THE § <br> ESTATE OF LAUREN M. FRAZIER, § <br> DECEASED, § <br>     Plaintiffs § <br> § <br> V. § <br> § <br> § <br> HONEYWELL INTERNATIONAL, INC., § <br> F/K/A ALLIED-SIGNAL, INC. § <br>     Defendant. § | | CASE NO. 2-05CV548 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Honeywell International, Inc.'s ("Honeywell") Motion for Judgment Notwithstanding the Verdict, or Alternatively Motion for New Trial and for Remittitur (Docket No. 86). After considering the Motion, the Court **GRANTS** the motion in part and **DENIES** the motion in part.

**BACKGROUND**

This wrongful death crashworthiness case arises out of the death of eighteen year old Lauren Frazier. On August 18, 2004, Carol Wayne Frazier and his wife Tonya R. Frazier ("the Fraziers") were preparing for Lauren Frazier, the youngest of their three daughters, to start college at Baylor University. The Fraziers were planning to take Lauren to Waco the next day, where her sister, a recent Baylor graduate waited to show her around campus. After Lauren, her mother and father, and a friend, Brady Ross, finished packing the car, Lauren's father, Carol, suggested the family go for

1

ice cream—one of their favorite things to do together—one last time before Lauren left for college. Brady Ross, a friend of Lauren's, drove his Tahoe because the Fraziers' car was fully packed with Lauren's belongings.

Carol Frazier sat in the front passenger seat. Lauren sat in the left rear passenger seat behind Brady Ross and next to her mother, Tonya Frazier, who sat in the right rear passenger seat. On the way home from getting ice cream, another car coming from the opposite direction turned left into the Fraziers' lane colliding with the Tahoe. This car was driven by Natalie White.[1] After the initial impact, the Tahoe spun around and impacted Natalie White's car a second time before rolling down an embankment. During the dynamics of the accident, Lauren Frazier was ejected from the Tahoe, while her parents and Brady Ross were not ejected. Lauren Frazier died as a result of her injuries, while her father and Brady Ross suffered only minor injuries, and her mother more serious, but not life threatening injuries.

While acknowledging that Ms. White was 100 percent the cause of the "accident," the Fraziers alleged that Lauren's "injuries" from the ejection caused her death and that her ejection was due to the defective design of the Tahoe's JDC seatbelt, which had been designed, manufactured and sold by Honeywell. The Fraziers alleged Lauren had been wearing her seatbelt at the time of the accident, but the seatbelt's defective design permitted it to spontaneously unlatch during the dynamics of the accident, allowing Lauren to be ejected from the Tahoe and killed. Honeywell alleged that its seatbelt design was not defective, but that Lauren Frazier was not wearing her seat belt at the time of the accident. While the design of the seatbelt was certainly an issue, the central

---

[1] White was later determined to have been intoxicated at the time of the accident. Both parties stipulated that Ms. White was 100 percent the cause of the accident.

contested issue at trial was whether or not Lauren was wearing her seatbelt at the time of the accident.

After a four day jury trial in February 2006, the jury returned its verdict finding that Lauren had been wearing her seatbelt at the time of the accident and that the seatbelt had been defectively designed by Honeywell. The jury found that neither Natalie White nor Brady Ross proximately caused Lauren's injuries, but that Honeywell was 95% responsible for her fatal injuries, and GM, the Tahoe's manufacturer, 5% responsible. The jury awarded Lauren's parents, Carol and Tonya Frazier, $4,000,000.00 each for past loss of companionship and mental anguish and $8,000,000.00 each for future loss of companionship and mental anguish, for a total damage award of $24,000,000.

Honeywell timely filed this motion for judgment not withstanding the verdict, or in the alternative for a new trial, and remittitur. Following extensive briefing by both parties and a hearing on the motion, the Court **GRANTED** the motion in part, and **DENIED** it in part without a formal written opinion, which the Court now enters.

## APPLICABLE LAW

**a. Motion for JNOV/JMOL**

A motion for judgment as a matter of law should be granted if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). The jury's verdict is afforded great deference, and a post-judgment motion for judgment as a matter of law should be granted only when "'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 486 (5th Cir. 2004) (quoting *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th

Cir. 2000)).

A party may not base a motion for judgment as a matter of law on a ground that was not included in a prior motion for a directed verdict. *Smith v. Louisville Ladder Co.*, 237 F.3d 515, 526 (5th Cir. 2001); *see also McCann v. Tex. City Ref., Inc.*, 984 F.2d 667, 672 (5th Cir. 1993) (holding "a party may not base a motion for JNOV on a ground that was not included in a prior motion for a directed verdict; and (2) It would be a constitutionally impermissible re-examination of the jury's verdict for the district court to enter judgment n.o.v. on a ground not raised in the motion for directed verdict").

### b. Motion for New Trial

Federal Rule of Civil Procedure 59 permits a motion for new trial by any party and on all or any of the issues within ten days after judgment is entered. FED. R. CIV. P. 59. The district court may grant a new trial pursuant to this rule "where necessary to 'prevent an injustice.'" *United States v. Flores*, 981 F.2d 231, 237 (5th Cir.1993) (quoting *Delta Eng'g Corp. v. Scott*, 322 F.2d 11, 15–16 (5th Cir.1963), *cert. denied*, 377 U.S. 905 (1964)). A motion for new trial is addressed to the trial court's discretionary authority, and great latitude is given to the trial court when the motion cites errors in the conduct of trial because the trial court "occupies the best vantage from which to estimate the prejudicial impact of the error on the jury." *Cruthirds v. RCI, Inc.*, 624 F.2d 632, 635 (5th Cir. 1980).

### c. Remittitur

Remittitur is appropriate when the damages award is "excessive or so large as to appear contrary to right reason." *Laxton v. Gap, Inc.*, 333 F.3d 572, 586 (5th Cir. 2003). A court does not "reverse a jury verdict for excessiveness except on the strongest of showings." *Caldarera v. Easter*

*Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983). Fifth Circuit precedent demonstrates that the court "will not disturb the jury's award unless it is entirely disproportionate to the injury sustained." *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1427 (5th Cir. 1992). A new trial, not remittitur, is appropriate when the jury's award resulted from passion and prejudice. *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 275 (5th Cir. 1998) (citing *Caldarera*, 705 F.2d at 782).

When evaluating whether a jury award is proper, the Court reviews awards "in cases with similar injuries in the relevant jurisdiction." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). The relevant jurisdiction in a state law claim is the state providing the substantive law for that claim. *Id*. Accordingly, in a wrongful death case, "Texas wrongful death cases and Fifth Circuit cases applying Texas wrongful death law comprise the relevant jurisdiction." *Id*. If remittitur is appropriate, the amount of remittitur is calculated in accordance with the maximum recovery rule if applicable,[2] "which mandates that the jury's verdict be reduced to the maximum amount the jury could properly have awarded." *Wellborn,* 970 F.2d at 1428. However, "because the facts of each case are different, prior damages awards are not always controlling; a departure from prior awards is merited if unique facts are present that are not reflected within the controlling caselaw." *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002).

## ANALYSIS

### A. Motion for Judgment

In its motion, Honeywell asserts several new grounds in support of the motion that were not originally raised in a motion for judgment as a matter of law. The law requires all grounds asserted

---

[2] The maximum recovery is calculated as follows: amount of similar award + 50% of similar award = maximum recovery. *Id*. at 156.

in a later filed motion for judgment to have been raised prior to the verdict. Accordingly, Honeywell has waived the following arguments: (1) the rebuttable presumption of Texas Civil Practice and Remedies Code section 82.008(a), (2) the component supplier defense under Texas law, and (3) the length of the mounting stalk argument. The Court turns to Honeywell's preserved arguments.

*1. Producing Cause*

Honeywell argues that the Fraziers failed to prove specific causation. Texas Civil Practice and Remedies Code section 82.005 requires the plaintiff to prove that the alleged defect was "a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery." TEX. CIV. PRAC. & REM. CODE § 82.005. To demonstrate producing cause, the Fraziers' expert, Steve Syson, was asked the following question at trial: "from an automotive crashworthiness standpoint, if Lauren Frazier's seatbelt buckle had not unlatched in this accident, would she have been ejected and killed?" Syson responded "no." Dr. Marc Krouse was also asked "if Lauren Frazier's seatbelt buckle had not unlatched in this accident, would she have been seriously injured?" He responded "no." In addition, on cross-examination, Honeywell's expert admitted that Lauren Frazier would not have been killed had her seatbelt remained latched and she had not been ejected from the vehicle. Finally, extensive physical evidence including photographs regarding seatbelt bruising and injury patterns, the Tahoe wreckage, and accident reconstruction scenarios were all presented to the jury by both sides.

The testimony of three separate expert witnesses went before the jury regarding producing cause, and they all reached the same conclusion: if the seatbelt had remained latched, Lauren Frazier would not have died. Additionally, the physical evidence of the injuries and accident wreckage were all before the jury. Accordingly, the facts and inferences on this issue point in favor of the Fraziers,

and a rational jury could have reached the verdict that was reached in this case.

*2. Magnitude of Risk and Alternative Designs, Safety, and Feasibility*

Honeywell's next few arguments go to the Fraziers' ability to prove their prima facie case. First, Honeywell argues that the Fraziers failed to establish the magnitude of risk allegedly associated with the JDC buckle or any of their proposed alternative designs. Second, Honeywell argues the Fraziers failed to demonstrate that proposed alternative designs were safer than the JDC buckle. Third, Honeywell argues the Fraziers failed to produce evidence regarding the feasibility of the alternative designs.

The Fraziers must demonstrate that there was a safer alternative design that either would have prevented or significantly reduced the risk of injury. *See* TEX. CIV. PRAC. & REM. CODE § 82.005. Regarding the risk analysis, Honeywell contends this means the Fraziers should have produced specific empirical data demonstrating that the G forces necessary to cause inertial release of the seat belt were present in this case. This is perhaps an advantageous jury argument, but it is simply not what the law requires. The Fraziers were required to establish (1) that there was a safer alternative design (meaning a design that would have prevented or significantly reduced the risk of injury that was economically and technically feasible) and (2) that the defect was the producing cause of the injury. TEX. CIV. PRAC. & REM. CODE § 82.005.

In order to satisfy prong one, the Fraziers put on evidence through Mr. Syson and on cross examination of Mr. Davee that the JDC buckle failed to provide proper restraint because it unlatched, that it violated FMVSS 209 and SAE J4C, that it violated GM's internal performance requirements of staying latched 100% of the time, and that the buckle had no internal blocking device to prevent inertial release. Additionally, Syson testified as to numerous alternative designs that did not unlatch

when tested under the same conditions present when the JDC buckle unlatched. Syson then testified that use of any of these alternative designs would have prevented Lauren Frazier's ejection and death because those buckles would have remained latched in the accident. The Fraziers also showed the jury testing on these alternative buckles, and Honeywell's own expert admitted that each of these alternative designs was economically and technically feasible during the relevant time period. Accordingly, the Fraziers produced sufficient evidence for a jury to find there was a safer alternative design and the defect was a producing cause of the fatal injury to Lauren Frazier.

### 3. General Motors's responsibility

Honeywell's final argument states that Honeywell can have no liability because it offered a safer buckle to GM for use in its vehicles and GM chose the buckle at issue instead. Honeywell contends that as a sophisticated purchaser, GM—not Honeywell as the supplier— had the duty to exercise reasonable care in choosing the buckle. Honeywell argued this to the jury, and through the apportionment of liability question, the jury considered GM's responsibility for Lauren Frazier's injuries and found GM five percent responsible. The Fraziers put on sufficient evidence for a reasonable jury to find for the Fraziers on the issues raised in this motion.

Thus, Honeywell's Motion for Judgement Notwithstanding the Verdict is **DENIED**.

## B. Motion for New Trial

Honeywell's arguments for a new trial are centered around alleged errors by the Court during trial. Honeywell asserts the following grounds for its motion for new trial: (1) the Fraziers' expert testimony should have been stricken under *Daubert*, (2) the Court erred in admitting "crash and sled test videos" without proper predicate, (3) the Court's instructions to the jury regarding proportionate responsibility and allocation of fault were erroneous, (4) the Court improperly excluded evidence

of Natalie White's intoxication, (5) the jury's verdict that Natalie White was not at fault was contrary to the Fraziers' stipulation that she caused the accident, (5) the Court limited the parties' trial time to nine hours, which violated Honeywell's due process rights, and (6) the Fraziers' counsel made an improper jury argument.

*1. The Fraziers' expert testimony and crash test videos*

Honeywell's first two grounds for new trial are interrelated. Honeywell argues that the Court improperly admitted crash test videos into evidence. Honeywell argues the videos were not similar to the accident itself and claims the Court should have required a showing of substantial similarity between the tests on the videos and the conditions of the accident.

Honeywell's arguments go to the weight of the evidence and not its admissibility. The threshold for admissibility of evidence is a low one. Under Federal Rule of Evidence 402, "all relevant evidence is admissible," and under Rule 401, relevant evidence "means evidence having *any* tendency to make the existence of fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401 (emphasis added).

The evidence was relevant to demonstrate to the jury what happens during impact when a JDC buckle comes unbuckled and to show that it can unbuckle due to inertia during impact. The buckles in the videos were substantially similar to those in Brady Ross's Tahoe, and Honeywell was free to—and did in fact—cross examine the Fraziers' expert on the level of similarity between the videos and the conditions of the accident.

In its last sentence in the brief on this issue, Honeywell further claims the videos should have been excluded under Rule 403 because they were more prejudicial than probative. *See* FED. R. EVID.

403. However, Honeywell does not demonstrate that the probative value was substantially outweighed by the danger of misleading or confusing the jury as required by the rule.

Next, Honeywell argues that the Fraziers' expert, Steve Syson's, testimony and underlying data should have been stricken because it did not fit the facts in question as required by *Daubert*. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591–92 (1993). Syson testified in conjunction with the crash test videos, and Honeywell argues that Syson did not present test reports or other data supporting his analysis of the videos.

First, Syson was deposed well before the deadline for filing *Daubert* motions, and he testified at his deposition about the very material Honeywell now complains. At no time did Honeywell file a *Daubert* motion to exclude this testimony. Honeywell did not even seek leave from the Court to file a late *Daubert* motion. Accordingly, Honeywell has waived its right to object to the testimony.

Second, Honeywell's briefing indicates that its major opposition to Syson's testimony is in conjunction with the videos discussed above. Honeywell objected to the videos, and the Court overruled its objection. After considering the briefing and reviewing the decision, the Court stands by its ruling. Honeywell has not demonstrated how Syson's testimony was unreliable.

*2. The Court's instructions to the jury regarding proportionate responsibility*

Honeywell next argues that the Court erred in failing to define the term "percentage of responsibility" under Texas Civil Practice and Remedies Code section 33.003(a). Honeywell argues that this failure constituted an improper comment on the evidence. When moving for new trial based on improper jury instruction:

> First, the challenger must demonstrate that the charge creates substantial doubt as to whether the jury was properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the

> entire record, that the challenged instruction could not have affected the outcome of the case.

*Green v. Admin. of Tulane Ed. Fund*, 284 F.3d 642, 659 (5th Cir. 2002). The Court used the proportionate responsibility instructions directly from the Texas Pattern Jury Charge, which instruct the jury to assign percentages to each named person and the percentages must total 100%. In ruling on Honeywell's objection during the charge conference, the Court determined that defining the term "proportionate responsibility" would not be helpful to the jury and would not add anything meaningful to the instruction. Honeywell has failed to demonstrate that the Court's charge created substantial doubt as to whether the jury was properly guided in its deliberations and has failed to show how the instruction would have affected the outcome of the case.

### 3. The Court's exclusion of evidence of Natalie White's intoxication

Honeywell claims the Court erred in excluding certain evidence related to Natalie White, the driver of the vehicle that caused the accident. Honeywell bases its argument on the ground that Texas Civil Practice and Remedies Code Chapter 23 requires introduction of evidence of all conduct that may contribute to causing the harm for which a claimant seeks recovery.

Honeywell argues that the jury was unable to properly consider Natalie White's actions at the time of the accident because the Court excluded statements about Ms. White talking on her cell phone as well as testimony related to her intoxication. However, the jury did consider, and in fact had to take as true, that Ms. White was 100 percent the cause of the accident. The parties stipulated to this at trial. Honeywell could cite to no case law that said intoxication evidence is relevant when the parties have stipulated that the person was the cause of the accident. Since the parties stipulated that Natalie White caused the accident, her intoxication was not relevant to any issue in the case.

This was a crashworthiness case. The Fraziers did not allege Lauren's injuries were caused by the accident, but instead alleged Lauren's injuries were caused by her seatbelt's failure to restrain her during the accident. As such, the jury questions focused on "cause of the injury" not "cause of the accident." A stipulation as to Ms. White's conduct in relation to the accident was sufficient for the jury to determine her proportionate responsibility. Furthermore, during closing argument Honeywell never argued that any percentage of responsibility for Lauren's injuries should be assigned to either Ms. White or Mr. Ross, so it is not surprising that the jury assigned none. When the jury apportioned responsibility, the jury obviously concluded that her fatal "injuries" were a result of her ejection from the Tahoe. Honeywell's argument regarding exclusion of evidence of White's intoxication and cell phone use is without merit.

*4. The jury's verdict that Natalie White was not at fault*

Honeywell's argument is essentially that because the parties stipulated that Ms. White was 100 percent the cause of the "accident," the jury was erroneous in assigning her zero percent responsibility. However, as discussed above, this was a crashworthiness case and the jury was asked to apportion responsibility for the "cause of the injury" to Lauren Frazier, not the "cause of the accident." Regardless of whether the parties stipulated that Ms. White was 100 percent the cause of the accident, a jury could still have found Ms. White not at fault for Lauren Frazier's fatal injuries. In fact, Carol Frazier, Tonya Frazier and Brady Ross were in the same accident caused by Natalie White, but they did not suffer the significantly fatal injuries Lauren Frazier did, because they were not ejected from the Tahoe, arguably because their seatbelts remained buckled. Honeywell's argument is without merit.

*5. Trial time limits*

Honeywell next argues that the Court's limitation of trial time to nine hours per side for presentation of evidence violated its due process and seventh amendment rights.[3]   However, Honeywell did not object to the Court's proposed trial time limits as to presentation of evidence, nor did it request an extension or more time during trial.  In fact, Honeywell did not use its entire nine-hour allotment for presentation of evidence.

The Court has an inherent right to place reasonable limitations on the time allotted for trial.  *Dues v. Allstate*, 15 F.3d 506, 520 (5th Cir. 1994).  Because Honeywell failed to object and request more time, it has waived this argument.  Further, Honeywell has made no showing of how it was prejudiced by the time limits, especially since it did not exhaust the time it was given.

*6. The Fraziers' jury argument*

Finally, Honeywell contends that the Fraziers' counsel improperly argued the jury should "go kick Honeywell's butt" in their rebuttal closing argument.  Honeywell failed to object to this argument during trial, but argues that the statement is so egregious that it rises to the level of plain error thus requiring reversal.

"The plain error rule is 'not a run-of-the-mill remedy.'" *Rojas v. Richardson*, 703 F.2d 186, 190 (5th Cir. 1983) (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 (1981)). It is invoked "only in exceptional circumstances to avoid a miscarriage of justice." *Id*. (quoting *Eaton v. United States*, 398 F.2d 485, 486 (5th Cir. 1968), *cert. denied*, 393 U.S. 937 (1968)). For example, in *Rojas*, the court found that counsel committed plain

---

[3]   In addition to each party being allowed nine hours for presentation of evidence, each side was allowed 30 minutes for voir dire, 10 minutes for opening statements, and 40 minutes for closing arguments.

error when he referred to Mr. Rojas as an illegal alien, a charge undocumented in the record. *Id*.

The determination of clear error rests on the facts of each case. *Id*. Unlike the highly prejudicial nature of the statement in *Rojas*, the Fraziers' counsel's statement does not rise to the level necessary to find plain error. The Court instructed the jury that it was decide the case based solely upon the evidence, warned the jury to perform its duties without bias, prejudice or sympathy, and instructed the jury that counsels' arguments were not evidence. Charge of the Court at 1, 3, 8 (Docket No. 80); *see Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585–586 (5th Cir. 1985). Further, the Court instructed the jury that only compensatory damages were recoverable and compensatory damages are not allowed as a punishment against a party. Charge of Court at 6. If Honeywell felt prejudiced by the Fraziers' closing argument, it should have objected during trial so the Court could have had the opportunity to order the argument stricken and correct any potential error through an additional jury instruction. Honeywell has failed to show that a new trial is necessary to avoid a miscarriage of justice under the plain error standard.

Accordingly, Honeywell's Motion for New Trial is **DENIED**.

## C. Remittitur

For remittitur analysis, the relevant jurisdiction outlined in *Vogler* includes wrongful death cases in Texas state court and Fifth Circuit cases applying Texas law. The Fraziers cite to many Texas cases, which they claim are similar awards.[4] Honeywell argues that most of these cases fail

---

[4] *See Martin v. Med. City Hosp.*, 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 (Dallas County, Nov. 10, 2000); *Mongrain v. Hendrick Med. Ctr.*, 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 (Dallas County, July 12, 2002); *Bosworth v. Westwind Enters.*, 348-193000-02 (Tarrant County); *Alexander v. Corr. Servs. Corp.*, 236-187481-01 (Tarrant County, Sept. 12, 2001); *Sanchez v. Brownsville Sports Ctr.*, 51 S.W.3d 643 (Tex. App.–Corpus Christi 2001, no pet.); *Gen. Chem. Corp. v. De La Lastra*, 852 S.W.2d 916 (Tex. 1993); *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214 (Tex. App.–Amarillo 2003, no pet.); *Iracheta v. Gen. Motors Corp.*, 97-CV-E-01382 (Webb County, Nov. 3, 2000); *Wellisch v. United States Auto. Ass'n*, 98-CI-17487 (Bexar County, Feb. 17, 2000); *Garcia v. Ford*, 03-07-10755 (Zavala County, Mar. 1, 2005); *Marroquin v. Ford*, 04-61218-2 (Nueces County, May 23, 2004); *Ibarra v. LG Elecs.*, C-1077-03-F (Hidalgo

to differentiate between past and future damages as required by *Vogler*. *See* 352 F.3d at 156–57. However, in *Vogler* the defendants did not object to the past damage award, only to the future damage award. *See id*. Therefore, the court in *Vogler* had to rely only on cases where past and future damages were explicitly designated. *Id*. In this case, Honeywell objects to the entire $24,000,000.00 award. Accordingly, it is not necessary for the Court to seek out only those verdicts that separate past and future damages. *See id*. However, the Court does note that some of the cases cited by the Fraziers had aggravating factors not present in this case, such as punitive damages and malice. Accordingly, the Court is not considering those cases in its analysis.

Honeywell likewise relies on a laundry list of cases attached as Exhibit A to its motion for remittitur listed in a table summary titled "Texas wrongful death awards for the loss of a child." *See* Honeywell's Mot. for Remittitur, n.10 and Exhibit A. Like most of the Fraziers' cited cases, every case in the table except *Vogler* is an unreported state case. The parties agreed at the hearing on this motion that the cases submitted by both parties constitute the relevant body of case law for the jurisdiction and that the statements of these cases as stated in the briefing properly reflected the facts of each case. However, the Fifth Circuit has declined to rely on unreported decisions as benchmarks for the maximum recovery rule. *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002) ("None of these awards is officially reported, except for one that was reversed on appeal in a reported decision, on which we therefore do not rely."). The Fifth Circuit has stated the rationale for this policy:

> . . . from a practical standpoint, the comparability of unreported decisions is hard to judge from the records available. The Lebrons offer a mix of summary reports of

---

County, Nov. 1, 2004); *Rodriquez v. Cook Portable Warehouses*, 24,885 (Bastrop County, Oct. 4, 2005); *Garcia v. Ford*, 2004-04-2099-A (Cameron County, Oct. 3, 2005).

15

> verdicts from an unofficial publication, The Blue Sheet of Texas, and attorney affidavits. Use of such hearsay would create more problems than it would solve by provoking irrelevant disputes over the comparability of unreported decisions.

*Id*. As in *Lebron*, the parties submitted tables and summary charts of the cases they cited, but the Court was unable to do a thorough independent analysis of the records for these cases. Accordingly, although the cases may be relevant for caparison in the remittitur analysis, the Court is not bound to use them as boundaries under the maximum recovery rule.

No reported case is wholly similar to the facts of this case, thus the maximum recovery rule is not mandated here. However, due to the size of the verdict in this case the Court is of the opinion that a remittitur analysis is appropriate. The three most relevant cases for remittitur analysis are: *Vogler*, *Souza v. Cooper* (Bexar County, 2006), and *Logan v. City of Houston* (Harris County, 2006).

> a. *Vogler v. Blackmore*

In *Vogler*, the plaintiff brought a wrongful death action against the driver of a tractor-trailer and the driver's employer after his wife and three-year-old daughter were killed when the truck driver crossed the center line and struck the wife's vehicle. *Vogler*, 352 F.3d at 152–53. The jury awarded Vogler $200,000.00 for past loss of companionship and society and mental anguish sustained for the loss of his daughter, and $1,300,000.00 for future loss of companionship and society and mental anguish. *Id*. at 153. Following the verdict in the Eastern District, Judge Hannah denied defendants' motions for new trial or remittitur. *Id*. The Fifth Circuit cited to the maximum recovery rule, but held that the rule was not applicable with respect to the death of Vogler's child because there were no similar awards cited by the parties to apply the rule to. *Id*. at 157–58.

Using *Vogler*, the maximum recovery analysis would be as follows: *Vogler* awarded $1.5 million to one parent. In this case, both parents survived, thus the recovery would be $1.5 million

16

per parent, or $3 million total, plus 50% of that total equals $4.5 million. However, Honeywell said at the hearing that under its analysis of *Vogler*, appropriate damages would be $4 million per parent, totaling $8 million.[5]

Although *Vogler* is a similar case in the relevant jurisdiction on some levels, it is not a wholly similar situation as the Fifth Circuit requires in order to mandate the maximum recovery rule. *See id*. at 157–58. *Vogler* dealt with one parent's loss of a child. In this case, both parents survived and each suffer for the loss of their child. In *Vogler*, the surviving parent did not witness the accident. In this case, the Fraziers were involved in the accident and were bystanders when their daughter died. Tonya Frazier was seated right next to Lauren when the accident occurred and Lauren was ejected from the vehicle. Carol Frazier, who was only minimally injured in the accident, was seated in the vehicle's front passenger seat, saw Lauren on the ground immediately after the accident, and watched the medical personnel try to save her life. Accordingly, the recovery under *Vogler* is relevant for purposes of comparison, but the Court is not bound by the maximum recovery figures calculated using *Vogler*.

    b. *Souza v. Cooper*

In *Souza*, a husband and wife were struck by a drunk driver while repairing their vehicle on the side of the road. The husband later died, and his mother was awarded $6 million for her past and future loss of companionship and mental anguish. Using *Souza*, the maximum recovery analysis

---

[5] MR. CREWS: I think *Vogler* is a good guideline. I think we put in our brief a number that comes out somewhere in the neighborhood of about $4 million per parent.
THE COURT: 4 million per parent?
MR. CREWS: Yes, Your Honor.
THE COURT: A total of 8 million?
MR. CREWS: Yes, Your Honor.

17

would be as follows: *Souza* awarded $6 million to one parent, so in this case the award would be $12 million for both parents, plus 50% of that total equals $18 million dollars.

Although Honeywell brought this case to the Court's attention, Honeywell later distinguished the case in its reply because in *Souza*, the jury was allowed to hear evidence regarding the driver's intoxication. Honeywell argues that intoxication evidence often heightens the culpability of the wrongdoer thus leading to potentially larger verdicts. The accident in this case was also caused by a drunk driver, but because this was a crashworthiness case, the Court did not allow evidence of the driver's intoxication before the jury. Accordingly the facts of *Souza* are not wholly similar to the case at bar.

    *c. Logan v. City of Houston*

In *Logan*, a thirteen-year-old boy drowned in a drainage culvert during a flood in Houston, Texas. The boy's mother sued the City of Houston and recovered $2.5 million in past and future loss of companionship and mental anguish. Using *Logan*, the maximum recovery analysis would be as follows: *Logan* awarded $2.5 million to one parent, so in this case the award would be $5 million for both parents, plus 50% of that total equals $7.5 million dollars.

In its reply, Honeywell distinguishes this case by noting that the jury's $2.5 million dollar verdict was subject to a statutory cap of $250,000, but even surviving such a cap, $7.5 million dollars is a far smaller award than the jury's $24 million. Regardless of the statutory cap this verdict was later subject to, this is a relevant case for remittitur analysis purposes.

Because these three cases in the relevant jurisdiction lack several of the unique characteristics of the present case, the Court is not bound by the maximum recovery rule, yet the Court is of the opinion that a remittitur is appropriate in this case. While the death of a child, at any age, is a life

changing and devastating blow to any parent, an award of compensatory damages is still subject to review in light of similar awards in other cases. A review of cases with the most similar injuries in the relevant jurisdiction demonstrates that jury verdicts in Texas vary greatly and are fact intensive. The three most similar cases, *Vogler*, *Souza*, and *Logan*, would yield verdicts of $4.5 million, $18 million, and $7.5 million respectively.

In ordering a remittitur, the Court does not in any manner minimize or lessen the personal loss the Fraziers have suffered as a result of the loss of their daughter. The Court heard the compelling testimony of Carol Frazier: what he and his wife went through at the time of the accident; the kind of daughter Lauren had been; her exceptional academic and athletic record, her work ethic, her unique personality; the unfortunate timing of her death, the night before she was leaving for college at Baylor University; instead of moving Lauren to Waco, having to call Baylor to let them know their youngest daughter would not be attending classes in the fall; instead of helping Lauren unpack her things at college, having to shop for a burial dress for Lauren; instead of receiving an exuberant phone call about Lauren's first day of college, they had to bury her; the continuing effect it has had on their family; and all of the future events in Lauren's life that they had expected to see, but will not be able to see.

Carol Frazier's testimony about his daughter's death and the impact it has had on their family, was as compelling and moving as any this judge has heard in over 30 years as a civil trial attorney and judge. During his testimony many female jurors were in tears and several male jurors seemingly could not bring themselves to look at him. Nevertheless, it is this Court's duty order a remittitur when it finds a verdict to be excessive, and this Court finds this verdict in the amount of $24 million to be excessive.

At the same time, retrying this case—even on damages alone—would only serve to cause this family more pain and anguish which this Court does not want to see them endure. Accordingly, this Court after conducting a thorough remittitur analysis is of the opinion than a remittitur amount near the middle of the three verdicts in the relevant jurisdiction with the most similar injuries is appropriate in this case. Accordingly, the Court offers the Fraziers a remittitur in the total amount of $9.75 million dollars ($4,875,000 each for past and future loss of companionship and mental anguish) in lieu of a new trial.

## CONCLUSION

The Fraziers put on sufficient evidence for a reasonable jury to find for the Fraziers on the issues raised in Honeywell's motion for judgment. Thus, the motion is **DENIED**. Because Honeywell's arguments for new trial are without merit, the motion is **DENIED**. Honeywell's motion for remittitur is **GRANTED in part** and remittitur in the amount of $9.75 million dollars is appropriate. If the Fraziers do not accept the remittitur, a new trial on damages is ordered. The Fraziers are to file a notice of their decision within 30 days.

**So ORDERED and SIGNED this 3rd day of October, 2007.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**